IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WILLIAM PATTERSON and
ERICA PARENTI,

      Plaintiffs,

v.                         CIVIL ACTION NO. 1:21CV126
                                      (Judge Keeley)

NEWREZ LLC f/k/a NEW PENN
FINANCIAL, LLC d/b/a SHELLPOINT
MORTGAGE SERVICING; US BANK
TRUST NATOINAL ASSOCIATE AS OWNER
TRUSTEE FOR VRMA ASSET TRUST; and
KAY DAVID

      Defendants.

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

Seeking to avoid foreclosure of their home, the plaintiffs, William Patterson ("Patterson") and Erica Parenti ("Parenti") (collectively, "the Plaintiffs"), sued the defendants, NewRez LLC f/k/a New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), US Bank Trust National Association as Owner Trustee for VRMTG Asset Trust ("US Bank Trust"), and Kay David ("David") for predatory lending and abusive loan servicing practices regarding their mortgage (Dkt. No. 5 at 5). They filed suit in the Circuit Court of Monongalia County, West Virginia on August 17, 2021. Id. at 1. On the following day, when the foreclosure sale was scheduled to occur, the state court granted

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

the Plaintiffs' emergency motion for a preliminary injunction. Id. at 32-34.

On September 17, 2021, Shellpoint and US Bank Trust ("the corporate defendants") removed the case to this Court based on diversity of citizenship between themselves and the Plaintiffs (Dkt. No. 1 at 3-8). Pursuant to Federal Rule of Civil Procedure 12(b)(6), they jointly moved to dismiss the Plaintiffs' complaint (Dkt. No. 6). On October 8, 2021, pursuant to 28 U.S.C, § 1447, the Plaintiffs moved to remand the case to state court (Dkt. No. 9).

The issues in dispute have been fully briefed, and the Court has heard oral argument on the pending motions. After careful consideration, for the reasons that follow the Court **DENIES** the Plaintiffs' motion to remand (Dkt. No. 9), **DISMISSES** David as a defendant, and **GRANTS-IN-PART** and **DENIES-IN-PART** the corporate defendants' motion to dismiss (Dkt. No. 6).

## I.  Factual Allegations

As it must, the Court construes the following facts in the light most favorable to the Plaintiffs. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013). In 2005, the Plaintiffs received a plot of land from Erica Parenti's family on which they planned to build a home (Dkt. No. 5 at 5-6). They obtained a $100,000 loan

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

with a 30-year term and 5.75% interest rate from First United Bank. Id. at 6. Shortly thereafter, the Parenti family placed a second deed of trust and a $35,000 lien on the Plaintiffs' land. Id. at 7. Later, in December 2005, using a $65,000 loan with a 6.89% interest rate from BB&T, Patterson financed the purchase of an adjoining property. Id.

In 2007, in an effort to lower their monthly expenses, the Plaintiffs responded to an advertisement by Advanced Financial Services, Inc. ("AFS") and decided to consolidate and refinance their First United and BB&T loans. Id. On June 26, 2007, the defendant David, a notary, came to the Plaintiffs' home to close that loan. Id. at 8. She instructed them where to sign the loan documents but "did not provide a meaningful opportunity for [them] to understand the transaction." Id.

The Plaintiffs' newly consolidated loan was in the amount of $185,000, with an interest rate of 6.875% and a 30-year term. Id. It also included a "settlement charge" of $9,432.02 and a "cash out" of $8,108.63, which were unanticipated charges that increased the amount of money the Plaintiffs owed. Id. at 7. Following consolidation, the First United lien was paid and released, and the BB&T lien was paid, but not released. Id. The Parenti family lien, however, was neither paid nor released. Id.

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

Almost nine (9) years later, on February 10, 2016, the Plaintiffs modified their consolidated loan to extend its term for an additional forty (40) years, and also to add Parenti as a borrower. Id. A month later, Patterson lost his job and, eventually, the Plaintiffs were unable to make their monthly loan payments. Id. Their loan had been in arrears for six (6) months when Shellpoint began servicing it on June 16, 2017. Id.

In order to bring the loan current, Shellpoint instructed Parenti to apply for a loan modification, which she did. Id. at 9. And although the Plaintiffs repeatedly submitted certain documents in support of their loan modification, Shellpoint ultimately denied their application for lack of documentation on April 2, 2018. Id.

After that denial, the Plaintiffs reapplied for a loan modification, but Shellpoint again denied their application for lack of documentation in December 2018. Id. Finally, on February 27, 2019, Shellpoint denied the Plaintiffs' third application based on their failure to meet the requirements for assistance. Id. at 10. The Plaintiffs contend that none of these denials contained the disclosures required by law. Id.

Although the Plaintiffs continued to request assistance in an effort to bring their loan current, Shellpoint refused to speak

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'**
**MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST**
**DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART**
**THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

with Parenti and failed to respond to the Plaintiffs'
correspondence. Id. Shellpoint also refused the Plaintiffs' offers
to make lump sum payments on the loan while applications to modify
their loan payments were pending, nor would it inform the
Plaintiffs of the total amount they were in arrears. Id. at 11.

On September 30, 2019, the corporate defendants sought
judgment in state court directing release of the three prior deeds
of trust on the Plaintiffs' property resulting from the First
United loan, the BB&T loan, and the Parenti family loan. Id. at
12. Although they named both the Plaintiffs and the Parenti family
as defendants, they only notified the Parenti family of the suit.
Id. The Plaintiffs nevertheless learned of the action and contacted
the corporate defendants, who advised that they need not respond
to the petition. Id.

The Parenti family deed of trust had been filed after the
First United deed of trust, but before the AFS deed of trust. Id.
at 12-13. Although no proceeds from the Plaintiffs' consolidated
loan had ever gone toward satisfying the outstanding Parenti family
loan, the corporate defendants nevertheless represented to the
state court that the First United loan, the BB&T loan, and the
Parenti family loan each had been paid in full. Id. Eventually, on
February 11, 2021, the state court granted default judgment against

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

the Plaintiffs and the Parenti family and released all three deeds

of trust. Id.

Following the state court's action, on May 26, 2021, pursuant

to the federal Real Estate Settlement Procedures Act and the West

Virginia Consumer Credit Protection Act, the Plaintiffs sent a

request for information, notice of error, and notice of opportunity

to cure to Shellpoint. Id. at 13. Shellpoint partially responded

to this request and attempted to charge the Plaintiffs a processing

fee to avoid foreclosure. Id. Ultimately, however, after

Shellpoint refused to enter into a repayment plan with them, the

Plaintiffs filed suit in order to avoid foreclosure. Id.

The complaint asserts that although US Bank Trust claims to

have been assigned the loan and Shellpoint claims to be the

servicer of the loan neither can establish the proper chain of

title authorizing them to foreclose on the loan. Id. at 8. It

alleges twelve causes of action against the defendants, including

illegal mortgage, unauthorized practice of law, unconscionability,

fraud, action to quiet title, joint venture and agency,

misrepresentations, unconscionable conduct, refusal to apply

payments, fraud, tortious interference with contract, and breach

of contract.

PATTERSON ET AL. V. NEWREZ LLC ET AL.                        1:21CV126

MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]

II.  **Plaintiffs' Motion to Remand**

Following removal by the corporate defendants, the Plaintiffs moved to remand the case to state court on the basis that (1) the corporate defendants failed to obtain David's consent to removal, and (2) the Plaintiffs and David, all of whom are West Virginia residents, are not diverse (Dkt. No. 9). The corporate defendants oppose remand, asserting that the Plaintiffs fraudulently joined David as a defendant (Dkt. No. 13 at 3).

A.  **Rule of Unanimity**

Pursuant to 28 U.S.C. § 1446(b), a defendant must file its notice of removal within 30 days following receipt of the initial pleading or summons, and "all defendants who have been properly joined and served must join in or consent to the removal of the action." Here, as the Plaintiffs contend, the corporate defendants did not satisfy this so-called rule of unanimity (Dkt. No. 9-1 at 4-5). Although each defendant accepted service on August 19, 2021 (Dkt. No. 5 at 2), the corporate defendants did not obtain David's consent prior to filing their notice of removal on September 17, 2021 (Dkt. Nos. 1 at 9-10; 13 at 3). Typically, this omission would require remand, but the corporate defendants contend they are exempt from this requirement because the Plaintiffs fraudulently

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

joined David as a defendant when they filed suit (Dkt. No. 1 at 9-10; 13 at 3).

## B.   Fraudulent Joinder

It is axiomatic that when an action is removed from state court the receiving federal district court must determine whether it has original jurisdiction over the plaintiff's claims. <u>Kokkonen v. Guardian Life Ins. Co. Of Am.</u>, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction" and possess "only that power authorized by Constitution and statute."). If removal is based on diversity of citizenship under 28 U.S.C. § 1332, the removing party bears the burden of establishing that "the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states." 28 U.S.C. § 1332. Courts should resolve any doubt "about the propriety of removal in favor of retained state court jurisdiction." <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232-33 (4th Cir. 1993).

The Plaintiffs concede that the amount in controversy requirement has been satisfied because they owe more than $75,000 towards the consolidated loan (Dkt. No. 1 at 4). They also agree that diversity exists between them and the corporate defendants; they are citizens of West Virginia, Shellpoint is a citizen of

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

Delaware and New York,[1] and US Bank Trust is a citizen of Delaware[2] (Dkt. Nos. 5 at 6; 1 at 5-6). But they argue that the Court lacks jurisdiction to hear the case because defendant David is a citizen of West Virginia (Dkt. No. 9-1 at 5-6). The corporate defendants contend that the Court should disregard David's citizenship, claiming she has been fraudulently joined (Dkt. No. 1 at 6-9).

The doctrine of fraudulent joinder is a narrow exception to the requirement of complete diversity. Jackson v. Allstate Ins. Co., 132 F. Supp. 2d 432, 433 (N.D.W. Va. 2000). When applicable, it allows the Court to disregard the citizenship of, and dismiss, a non-diverse defendant. Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999)). Thus, if the doctrine applies the Court may retain jurisdiction even though a non-diverse party has been named a defendant. Jackson, 132 F. Supp. 2d at 433.

The removing party bears the "heavy burden of showing that there is no possibility of establishing a cause of action against [a] non-diverse party" by clear and convincing evidence. Jackson, 132 F. Supp. 2d at 433 (citing Hartley v. CSX Transp. Inc., 187 F.3d 422, 424 (4th Cir. 1999)). Alternatively, the removing party

---

[1] Shellpoint is a Delaware limited liability company whose members include Delaware limited liability companies and a Delaware corporation with a principal place of business in New York (Dkt. No. 5 at 6).
[2] US Bank Trust is a national association with its principal place of business in Delaware (Dkt. No. 5 at 6).

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

can establish that "there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Pritt v. Republican Nat. Committee, 1 F. Supp. 2d 590, 592 (S.D.W. Va. 1998).

The standard for fraudulent joinder is more favorable to a plaintiff than the standard for dismissal on a Rule 12(b)(6) motion. Mayes, 198 F.3d at 464. "Plaintiff need only have a slight possibility of a right to relief against a non-diverse defendant for jurisdiction to be improper in federal court. If a court identifies a glimmer of hope for the plaintiff's claim, then the jurisdictional inquiry ends." Bledsoe v. Brooks Run Mining Co., LLC, 2011 WL 5360042, at *1 (S.D.W. Va. Nov. 4, 2011) (citation omitted). The Court must resolve all issues of fact and law in the plaintiff's favor, but in doing so "is not bound by the allegations of the pleadings." Marshall, 6 F.3d at 232-33; AIDS Counseling and Testing Ctrs. v. Grp. W Television, Inc., 903 F.3d 1000, 1004 (4th Cir. 1990). Instead, it can consider "the entire record, and determine the basis of joinder by any means available." Id. at 1004 (internal citation omitted).

Because the corporate defendants have not alleged outright fraud in the Plaintiffs' pleading, they must show by clear and convincing evidence that there is no possibility that the Plaintiffs can establish a cause of action against David.

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

### C.   No Possibility of Relief Against David

David is named as a defendant in Counts One through Six of the complaint, which state claims for illegal mortgage, unauthorized practice of law, unconscionability, fraud, action to quiet title, and joint venture and agency (Dkt. No. 5 at 10-14). The corporate defendants contend that only Count 2, alleging the unauthorized practice of law, is properly asserted against David (Dkt. No. 1 at 5-9) and they challenge this claim, first on the basis that it is time-barred, and second that, as pleaded, David's actions do not constitute the practice of law under governing West Virginia law (Dkt. No. 13 at 4-7). The Court will address each of these arguments in turn.

### i.   Timeliness

Countering the corporate defendants' argument that their unauthorized practice of law claim against David is time-barred (Dkt. No. 13 at 6-7), the Plaintiffs contend that the Court should not consider the timeliness of their claim because it is an affirmative defense that has been waived by David, or alternatively find that their claim is timely under the doctrine of laches. They argue that the corporate defendants cannot challenge their unlawful practice of law claim as untimely because only David, the party affected by the claim, may raise this affirmative defense

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]

and she has waived the right to do so (Dkt. No. 9-1 at 7). In

support, they rely on dicta from a West Virginia case, Kinsinger

v. Pethel, 766 S.E.2d 410 (W. Va. 2014).

In Kinsinger, after the respondent transferred assets out of

a marital Thrift Savings Plan ("TSP"), the petitioner, his former

wife, sought to hold him in contempt of a Qualified Domestic

Relations Order ("QRDO") entered by the family court. Id. at 412.

The family court declined to hold the respondent in contempt

because the petitioner had not timely filed the QDRO.[3] Id. The

circuit court affirmed this ruling as a proper application of the

doctrine of laches. Id. at 413. The petitioner appealed this

decision to the Supreme Court of Appeals of West Virginia, which

reversed the lower courts' decisions, finding an erroneous

application of the doctrine of laches where neither court had made

the requisite determinations of harm or prejudice to the

respondent. Id. at 413, 415.

In a footnote, the Supreme Court observed in passing that the

order of the family court had not discussed the doctrine of laches

---

[3] Specifically, the parties had agreed in a final order of divorce that
the petitioner would receive half of the funds in a TSP if she prepared
a QRDO. Id. at 412. Three years later, the respondent withdrew all funds
from the marital TSP and opened a new TSP. Id. Three years after that,
and six years after the entry of the divorce order, the petitioner
finally filed a QRDO seeking her portion of the TSP funds. Id.

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]

because the respondent had never asserted it as a defense. Id. at
n.3. And the same footnote stated that "the doctrine of laches is
moot unless the affected party raises it as a defense," id. at
n.3, citing State, Dep't of Health & Hum. Res., Child Advoc. Off.
on Behalf of Robert Michael B. v. Robert Morris N., 466 S.E.2d
827, 834 (W. Va. 1995) (holding that, because a petitioner had not
pleaded or proven the defense of laches before a family law master,
he could not raise the defense for the first time on appeal).

The Plaintiffs suggest that both Kinsinger and Michael B. bar
the corporate defendants from raising the defense of laches where
David failed to do so. But neither Kinsinger nor Michael B.
addresses whether a defendant may assert the doctrine of laches on
another party's behalf where it stands to benefit from the defense.
And neither contains a syllabus point requiring that a particular
defendant must assert the defense. Rather, these cases instruct
(1) that a court may not to raise the doctrine of laches sua
sponte, and (2) that a defendant cannot raise the defense of laches
for the first time on appeal.

Neither scenario exists here. The Court has not raised the
doctrine sua sponte. Moreover, the corporate defendants stand to
benefit from application of the doctrine given that whether Count
2 has been timely asserted is determinative of their fraudulent

13

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'**
**MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST**
**DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART**
**THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

joinder argument. Therefore, the defense of laches is timely and may properly be asserted by the corporate defendants in this case.

Other federal courts in West Virginia have reached the same conclusion in similar circumstances. See, for example, May v. Nationstar Mortg., LLC, No. 3:12-CV-43, 2012 WL 3028467, at *1 (N.D.W. Va. July 25, 2012), where, in order to establish fraudulently joinder, the defendant mortgage company argued that the plaintiff's unauthorized practice of law claim against the individual defendant was time-barred.

During oral argument in this case, the Plaintiffs attempted to distinguish May, asserting that, unlike the individual defendant there, David has appeared and filed an answer in this case. Although the parties dispute whether David actually has appeared in this case,[4] the Court need not resolve the question since the individual defendant in May had appeared by counsel, consented to removal of the case to federal court, and moved to dismiss the plaintiffs' claims. See May, No. 3:12-CV-43, Dkt. Nos. 16, 17, 28.

---

[4] Upon being served with the summons and complaint in this case, David responded to several of the Plaintiffs' allegations via letter to the Plaintiffs' counsel. Counsel in turn mailed David's letter to the Circuit Clerk of Monongalia County "in the event that the Court wishe[d] to consider it as an Answer in this litigation" (Dkt. No. 5 at 2, 44, 45). Thereafter, the Clerk filed this letter as "Answer of M. Kay David (pro se)." Id.

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

The Court turns next to the timeliness of the Plaintiffs'
unauthorized practice of law claim, under either the applicable
statute of limitations or the doctrine of laches. "A claim seeking
damages for the unauthorized practice of law is governed by a two-
year statute of limitations." Heavener v. Quicken Loans, Inc., No.
3:12-CV-68, 2013 WL 2444596, at *5 (N.D.W. Va. June 5, 2013)
(citing W. Va. Code § 51-2-12)). Here, as the corporate defendants
assert, the Plaintiffs' claim is time-barred where their loan
closing occurred in 2007 but they failed to bring their claim until
2021.

Laches applies to claims seeking equitable relief. See Syl.
Pt. 2, Condry v. Pope, 166 S.E.2d 167, 167 (W. Va. 1969); Dunn v.
Rockwell, 689 S.E.2d 255, 266 (W. Va. 2009). For laches to bar a
claim, a defendant must prove that it has been prejudiced by the
plaintiff's lack of diligence in bringing the action. See White v.
Daniel, 909 F.2d 99, 102 (4th Cir. 1990).

Count 2 of the Plaintiffs' complaint seeks an injunction
against David to prevent her from committing further acts
constituting the unauthorized practice of law (Dkt. No. 5 at 13).
As the claim has been pleaded in equity, under West Virginia law
the doctrine of laches applies. Dunn, 689 S.E.2d at 255.

### MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS' MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]

Courts in this District have recognized that, because "equity follows the law," they may presume that a defendant would be prejudiced by a plaintiff's failure to bring an equitable claim within the statute of limitations applicable to an analogous action at law. May, 2012 WL 3028467, at *7 (citing Consolidation Coal Co. v. Consolidation Coal Co., Inc., 228 F. Supp. 2d 764, 768-69 (N.D.W. Va. 2001)). This rule has been applied to presume prejudice in circumstances similar to those in this case. See, e.g., May, 2012 WL 3028467, at *1 ("Because May failed to file the instant action until almost eight years after the closing, this Court presumes that Chambers would be prejudiced by allowing May to seek equitable relief on a claim for the unauthorized practice of law."); Heavener v. Quicken Loans, Inc., No. 3:12-CV-68, 2013 WL 2444596, at *5 (N.D.W. Va. June 5, 2013) ("Plaintiff waited almost five years after he executed the loan documents at issue before filing this action. This Court presumes that Defendant Quicken Loans would be prejudiced by allowing Plaintiff to seek equitable relief on a claim for the unauthorized practice of law."); Litten v. Quicken Loans, Inc., No. 1:13CV192, 2013 WL 6001256, at *6 (N.D.W. Va. Nov. 12, 2013) (presuming that the defendant would be prejudiced by allowing the plaintiffs to seek equitable relief for fraud nearly six years after they received a copy of all signed

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

loan documents and four years after the analogous statute of limitations would have expired).

Here, the passage of time is lengthy. It has been more than fourteen (14) years since David's unauthorized practice of law allegedly occurred. Moreover, David has had no connection to the Plaintiffs or their consolidated loan since 2007. Thus, applying a presumption that she would be prejudiced if the Plaintiffs were permitted to pursue equitable relief on such a stale claim is reasonable. Based on this presumption, the court concludes that the Plaintiffs' claim against David for the unauthorized practice of law is time-barred under the doctrine of laches.[5]

_____

[5] The Plaintiffs argue, for the first time in their reply brief, that the Court should reject the corporate defendants' timeliness challenge to Count 2 based on the common defense rule. (Dkt. No. 15 at 6). Because "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered," Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006), the Court is not required to address this argument. Even so, it lacks merit.

The common defense rule provides that "removal of a state claim is impermissible when the legal theory upon which the defendant's claim of fraudulent joinder is predicated is a common defense that equally disposes of all defendants to the suit." McDowell Pharmacy, Inc. v. W. Virginia CVS Pharmacy, L.L.C., No. 1:11-CV-0606, 2012 WL 2192167, at *5 (S.D.W. Va. June 14, 2012). Notably, the Fourth Circuit has not adopted this rule. But the Fifth Circuit has explained the rule thusly:

> [W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit. In such cases, it makes little sense to single out the in-state defendants as

PATTERSON ET AL. V. NEWREZ LLC ET AL.                          1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

**ii.  No Possibility of Relief Under West Virginia Law**

Even had the Plaintiffs timely filed their unauthorized practice of law claim against David, it would not be viable under governing West Virginia law. It is undisputed that David is a non-attorney notary who conducted the closing of the consolidated loan at the Plaintiffs' home (Dkt. No. 5 at 6). Her only task was to direct them where to sign the documents. Id. She answered no questions. And, because she could not answer their questions, the Plaintiffs now claim that they were deprived of a meaningful opportunity to understand the transaction. Id. at 13. At bottom, whether David's alleged actions constitute the unauthorized practice of law turns on which advisory opinion from the Unlawful Practice of Law Committee ("UPLC") of the West Virginia State Bar governs this case.

In 2003, the UPLC issued Advisory Opinion 2003-01, addressing "whether real estate closings conducted by lay persons constitute

---

"sham" defendants and call their joinder improper. In such circumstances, the allegation of improper joinder is actually an attack on the merits of plaintiff's case ...

Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 568, 574 (5th Cir. 2004).
     But the common defense rule does not bar the corporate defendants from arguing that Count 2 against David is untimely under the doctrine of laches. Such challenge is not an attack on the merits of the Plaintiffs' case against the corporate defendants and the Plaintiffs have made clear that David is the only defendant against whom Count 2 has been asserted.

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

the unauthorized practice of law" (Dkt. No. 9-4 at 3). It stated that a lay person is deemed to be practicing law whenever she (1) advises another in any matter involving the application of legal principles to facts, purposes, or desires; (2) prepares legal documents for another; or (3) represents the interest of another before a judicial tribunal. Id. at 4. The UPLC also noted that a variety of activities may occur at a real estate closing, including "[a]ttending the closing and obtaining appropriate signatures on documents" and "attending the closing and answering buyer and/or seller questions about documents and/or the transaction." Id. It then concluded that "generally, real estate closings constitute the practice of law," and that lay persons conducting real estate closings have engaged in the unauthorized practice of law. Id. at 5.

Notably, the advisory opinion recognized that some clerical functions may occur during a closing, including "simple execution of documents." Id. at 4-5. It then concluded that "in general, legal principles are applied to the factual situation to determine if and how the transaction should be conducted[,]" because "it is inherent at the closing itself that buyers and sellers will have questions about the transaction and documents, which answers

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

necessarily go to their respective legal rights and obligations.

Such answers are advising on legal matters." Id.

Later, in 2010, after receiving numerous complaints regarding the practice of law by lay persons at real estate closings, the UPLC issued Advisory Opinion 2010-002, clarifying that some activities routinely performed in real estate settings by non-lawyers constituted the practice of law. In doing so, it adopted a Stipulation and Agreed Order in the case of McMahon v. Advanced Title Services, No. 01-C-121 (Cir. Ct. Brooke Co., Mar. 31, 2010), which incorporated and clarified the 2003 principles as follows:

> It is the practice of law for a person to conduct a real estate closing (including "witness-only" or "witness" closings) for mortgage financing or real estate transaction, to or for the general consumer public or any third-party when part of his or her responsibilities as closing agent consist of: (1) explaining, interpreting, giving an opinion and/or advising another on the meaning of terms of principles (legal or otherwise) relevant to the mortgage transaction, or in matters involving the application of legal principles to particular facts, purposes, or desires; (2) instructing clients in the manner in which to execute legal documents; or (3) preparing the HUD-1 Settlement Statement, and at times, other instruments related to mortgage loans and transfers of real property . . . .

Id. at 15. Significantly, "the settlement agent may not present important legal documents to the seller, buyer, borrower, and/or

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

lender at closing without legal questions being asked and without giving legal advice." Id. at 16.

The Plaintiffs rely on both the 2003 and 2010 advisory opinions to argue that David's alleged actions constitute the practice of law (Dkt. No. 9-1 at 9-11). The corporate defendants, however, contend that, under the 2003 advisory opinion, David performed only clerical tasks (Dkt. No. 13 at 5-6). Because it agrees with the corporate defendants that the 2010 advisory opinion is not retroactive, May, 2012 WL 3028467, at *7, the Court must assess David's actions as the closing agent in 2007 under the standard articulated in the 2003 advisory opinion.

Other courts in this district have considered this question. In May v. Nationstar Morg., LLC, the plaintiff alleged that the defendant was a notary who instructed them where to sign, notarized the loan documents, but could not answer their questions about the documents. 2012 WL 3028467 at *7. The court concluded that the plaintiffs had no possible claim for the unauthorized practice of law because these services were ministerial rather than legal. Id. Likewise, in Shelton v. Wells Fargo Bank, the court concluded that the defendant, who had served as the closing agent on the plaintiff's loan, had not engaged in the practice of law where the plaintiff "set forth no evidence that she ever asked or that the

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

defendants ever provided any legal advice at the closing." 2010 WL
10152301 (N.D.W. Va. 2010).

Here, the Plaintiffs allege that David, a "notary public who
engages in real estate closings," "simply instructed [them] where
to sign the documents and did not provide a meaningful opportunity
for [them] to understand the transaction." But under the 2003
advisory opinion such allegations do not constitute a claim against
David for the unauthorized practice of law because they allege
only that she completed ministerial tasks. There is no allegation
that she advised the Plaintiffs on the law or about their rights
and obligations under the loan. And even if such ministerial tasks
arguably constitute the practice of law under the 2010 advisory
opinion, they clearly do not do so under the 2003 advisory opinion.
The Plaintiffs therefore have no possibility of relief against
David for the unauthorized practice of law in connection with the
2007 loan closing at issue in this case.

### iii. Other Counts Against David

The Plaintiffs nevertheless contend they have other viable
claims against David. These include illegal mortgage (Count 1),
unconscionability (Count 3), fraud (Count 4), action to quiet title
(Count 5), and joint venture and agency (Count 6) (Dkt. No. 9-1 at
n.1). The parties' arguments in this regard focus on whether the

PATTERSON ET AL. V. NEWREZ LLC ET AL.                          1:21CV126

MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]

Plaintiffs have pleaded a viable claim against David for joint venture and agency. The Plaintiffs argue that, "as a joint venturer or agent in the origination of the loan," David participated "in a scheme to induce Plaintiffs into the illegal loan based on fraudulent and illegal conduct." Id. The corporate defendants contend that, although not properly alleged in the complaint, the Plaintiffs are attempting to "use this joint venture theory as a way to back-door other claims against David in order to avoid federal court jurisdiction" (Dkt. No. 13) (cleaned up). They contend that, on close examination of the facts, it is impossible to establish that an agency relationship existed between either of them and David pointing to the obvious facts that David closed the consolidated loan in 2007, Shellpoint did not begin servicing the loan until 2017, and US Bank Trust was not assigned the loan until 2021 (Dkt. No. 13 at 7-8).

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal if a complaint does not state a claim upon which relief can be granted. "[A] complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). To satisfy this standard, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

A joint venture "is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill[,] and knowledge." <u>Armor v. Lantz</u>, 535 S.E.2d 737, 742 (W. Va. 2000) (quoting <u>Price v. Halstead</u>, 355 S.E.2d 380, 384 (W. Va. 1987)). To be a member of a joint venture an individual must make some contribution to the enterprise and assert some control over the venture. <u>Bennett v. Lending Sols. Inc.</u>, 2011 WL 4596973, at *3 (S.D.W. Va. Sept. 30, 2011) (citations omitted). Each member of a joint venture is liable for unlawful acts of the other members if committed within the scope of the venture and with the other members' implied consent. <u>Short v. Wells Fargo Bank Minn., N.A.</u>, 401 F. Supp. 2d 549, 563 (S.D.W. Va. 2005).

In their motion to remand, the Plaintiffs argue that

Defendant David had an agreement with the lender to engage in the business enterprise of the closing the loan at issue; that Defendant David shared in the profits of this enterprise with the lender, that is, the fees collected for closing the loan; that Defendant David used her purported "skill" as the loan closer to carry out the enterprise; and that the actions were done with a joint purpose to further the enterprise of the loan closing.

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

### MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS' MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]

(Dkt. No. 9-1 at n.1). But their complaint is devoid of any facts to support a joint venture claim against David. From the bare allegation that the defendants' "single business enterprise" was "the closing of the sale and financing of the home at issue in this case," the Plaintiffs conclusively assert that "the acts of [David] were conducted as part of the principal-agency relationship between the Defendants" (Dkt. No. 5 at 15-16). The remaining allegations in the complaint merely recite the elements of a joint venture claim.

The corporate defendants persuasively argue that there is no evidence of any affiliation between David and either of them, or that she acted as their agent at a loan closing a decade before either was connected to the Plaintiffs' loan. David may have been an agent of AFS, the loan originator, but AFS is not a defendant in this action. The Plaintiffs thus have failed to plausibly plead a joint venture and agency claim against David.

There being no possibility of relief against David, the Court concludes she has been fraudulently joined and that the corporate defendants were not required to obtain her consent to remove this case. It therefore **DENIES** the Plaintiffs' motion to remand (Dkt. No. 9), and will dismiss David as a defendant from this action,

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]

disregard her West Virginia citizenship, and retain jurisdiction

over this case. Mayes, 198 F.3d at 461.

### III. Corporate Defendants' Motion to Dismiss

The Court turns next to consider the corporate defendants'

motion to dismiss. Shellpoint has moved to dismiss Counts 1 through

6, while US Bank Trust seeks to dismiss the entire complaint (Dkt.

No. 6). The Plaintiffs assert that the Court should deny the

corporate defendants' motions under the law of the case doctrine

(Dkt. No. 10 at 2, 12-13).

### A.    Law of the Case Doctrine Inapplicable

When the state court granted the Plaintiffs' emergency motion

seeking a preliminary injunction to prevent the sale of their

property, it adopted the following language proposed by the

Plaintiffs:

> Plaintiffs have demonstrated a likelihood of success on
> the merits on the claims set forth in their Complaint,
> including their assertions that the foreclosure is
> improper because there is not adequate chain of title,
> the deed of trust is void due to fraud,
> unconscionability, and/or illegality; and that the
> continued delinquency leading to the foreclosure was
> caused by Defendants' actions.

(Dkt. No. 5 at 30). The Plaintiffs contend that this language

precludes the corporate defendants' challenges to their complaint.

The Court disagrees.

26

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

A preliminary injunction preserves the status quo between the parties until a trial on the merits can be held. Ne. Nat. Energy LLC v. Pachira Energy LLC, 844 S.E.2d 133, 141 (W. Va. 2020). Under West Virginia law, when granting or refusing a request for an injunction, state courts must consider the circumstances surrounding the case, including "the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ." Syl. Pt. 4, State ex rel. Donley v. Barker [Baker], 164 S.E. 154 (W. Va. 1932). To balance the hardship to the parties, courts also must consider "(1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest." State ex rel. E. End Ass'n v. McCoy, 481 S.E.2d 764, 778-79 (W. Va. 1996).

The law of the case doctrine recognizes that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). But because this doctrine was "crafted with the course of ordinary litigation in mind," Arizona, 460 U.S. at 618-19, it does not bar courts from assessing

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

"past holdings based on a different procedural posture" or from applying the proper standard of review at a subsequent stage of the litigation. Graves v. Lioi, 930 F.3d 307, 341 (4th Cir. 2019). Relevant to this case, courts have "refuse[d] to apply the law-of-the-case-doctrine to a ruling at the preliminary injunction stage unless the ruling was based on a pure issue of law." Wells Fargo Bank, Nat'l Ass'n v. Worldwide Shrimp Co., 2017 WL 7689635, at *6 (N.D. Ill. Dec. 29, 2017) (collecting cases).

In this case, the law of the case doctrine does not prevent the Court from ruling on the corporate defendants' motion to dismiss. In the first place, the state court's decision to grant the Plaintiffs' request for a preliminary injunction occurred at a time when the Plaintiffs were threatened with foreclosure of their property. That decision thus was not a purely legal decision to which the law of the case doctrine applies. Wells Fargo Bank, 2017 WL 7689635, at *6.

Moreover, the law of the case doctrine does not prevent the Court from applying the proper legal standard when reviewing a motion to dismiss, even though a preliminary injunction is in place. Graves, 930 F.3d at 341. Here, the pending motions present questions distinct from those addressed by the state court. Although the state court weighed the Plaintiffs' chance of success

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

on the merits of their claims as a factor in deciding whether to grant a preliminary injunction, it further considered the exigent circumstance of the impending sale of their property and the increased risk of irreparable harm they faced. <u>McCoy</u>, 481 S.E.2d at 778-79. In contrast, this Court must determine the viability of the Plaintiffs' claims under both substantive and procedural law and address the corporate defendants' challenges to the merits of the complaint.

**B.   Timeliness of Counts 1, 3, 4, and 5**

The corporate defendants challenge the timeliness of the Plaintiffs' claims for illegal mortgage (Count 1), unconscionability (Count 3), fraud (Count 4), and to quiet title (Count 5) (Dkt. No. 7 at 4-7). While they initially asserted that these claims were barred by the relevant statutes of limitation, they now agree with the Plaintiffs that, because each has been styled as a contract defense seeking equitable relief, the doctrine of laches applies (Dkt. Nos. 10 at 13; 14 at 4). As discussed earlier, for the Plaintiffs' claims to be barred by laches the corporate defendants must establish (1) that the Plaintiffs lacked diligence in bringing their claims, and (2) that they have detrimentally changed their position based on this delay. See <u>Dunn</u>, 689 S.E.2d at 267.

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

### i.  Delay

The corporate defendants assert unreasonable delay because it has been fourteen (14) years since the Plaintiffs became aware or should have become aware of the terms of their loan and any defenses to that contract (Dkt. No. 14 at 4-5). The Plaintiffs contend their delay was not unreasonable because they brought their claims in response to the corporate defendants' attempt to foreclose on their home (Dkt. No. 10 at 16-18).

Although the Plaintiffs clearly have delayed in asserting their rights, such delay is not so unreasonable as to bar their claims. In West Virginia, foreclosures sales by trustees may occur without judicial interference because such non-judicial foreclosures are "more time efficient and economical." Lucas v. Fairbanks Cap. Corp., 618 S.E.2d 488, 490 (W. Va. 2d005). To halt a non-judicial foreclosure sale, homeowners must file suit requesting equitable relief. Chandler v. Greenlight Fin. Servs., No. 2:20-CV-00217, 2021 WL 1202078, at *10 (S.D.W. Va. Mar. 30, 2021) (citing Lucas, 618 S.E.2d at 490). Here, the Plaintiffs attempted to halt the sale of their property by utilizing the only means available to them under law – filing suit and asserting equitable defenses to their mortgage contract.

PATTERSON ET AL. V. NEWREZ LLC ET AL.                      1:21CV126

### MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS' MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]

Moreover, even though the Plaintiffs have made various attempts to avoid foreclosure by non-legal means, Shellpoint allegedly thwarted their every effort. For example, at Shellpoint's instruction, the Plaintiffs submitted three loan modification applications between July 2017 and February 2019 (Dkt. No. 5 at 8-10). They allege that Shellpoint denied their first two applications for specious reasons, and when it finally denied their third application in February 2019 stated only that the Plaintiffs "[had] not [met] the requirements to qualify" for a modification. Id. Moreover, while their loan modification applications were pending, the Plaintiffs offered to make lump sum payments to bring their loan current, but Shellpoint refused these payments and would not inform them of the total amount due on their loan. Id. at 11.

The Plaintiffs further allege that, in September 2019, Shellpoint filed suit to clear the liens on the Plaintiffs' property without properly obtaining service of process on them. Id. at 12. After they learned about the lawsuit from the Parenti family, the Plaintiffs contacted Shellpoint, who "falsely advised [them] that they did not need to worry about or respond to the lawsuit." Id. Following this, Shellpoint misrepresented the status of the Parenti family loan to the state court in order to obtain

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

a default judgment against the Plaintiffs. Id. at 12–13.
Thereafter, the Plaintiffs sent a request for information, notice
of error, and notice of opportunity to cure to Shellpoint, and
brought suit only after Shellpoint scheduled the sale of their
property. Id. at 13.

Although fourteen (14) years have passed since the closing of
the Plaintiffs' loan, under the facts pleaded in their complaint
they have not unreasonably delayed asserting their breach of
contract defenses. As permitted under West Virginia law, they
brought an injunction action to halt foreclosure of their property
after long seeking to avoid foreclosure by non-litigation means.

### ii.  Prejudice

Nor can the corporate defendants establish the requisite
prejudice resulting from any delay by the Plaintiffs. The West
Virginia Supreme Court of Appeals "has consistently emphasized the
necessity of a showing that there has been a detrimental change of
position in order to prove laches." Dunn, 689 S.E.2d at 267
(citations omitted). According to the Plaintiffs, the corporate
defendants not only have not been prejudiced by any delay but
rather have benefitted because they have continued to collect their
loan payments (Dkt. No. 10 at 16–18). The corporate defendants
counter that the law presumes prejudice because the analogous

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

statutes of limitation for the Plaintiffs' claims have expired (Dkt. No. 14 at 4-5).

Under the circumstances of this case, the Court declines to apply the presumption of prejudice to these claims. In contrast to defendant David, who had undertaken no action concerning the consolidated loan since 2007, Shellpoint has actively serviced the Plaintiffs' loan since 2017, US Bank Trust has held the loan since at least 2021, and both sought to foreclose on the loan.

Furthermore, the corporate defendants have not suffered a detrimental change of position based on the Plaintiffs' delay. During oral argument, they could point only to the passage of time as evidence of prejudice, but such delay alone does not bar equitable relief under the doctrine of laches. See Syl. Pt. 1, State ex rel. Smith v. Abbot, 418 S.E.2d 575, 576 (W. Va. 1992). Therefore, because they have failed to clearly demonstrate any detrimental change in their positions, the corporate defendants cannot establish that the Plaintiffs claims in Counts 1, 3, 4, and 5 are barred by the doctrine of laches.

### C.   Count 2: Unauthorized Practice of Law

The corporate defendants next assert that Count 2 should be dismissed against them because it relates only to David (Dkt. No.

MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]

7 at 7). The Plaintiffs agree. In light of its earlier ruling dismissing David, the Court will dismiss Count 2 in its entirety.

### D.   Count 6: Joint Venture and Agency

The corporate defendants also contend that the Plaintiffs have failed to state any facts in support of the claims asserted in Count 6 (Dkt. No. 7 at 7-8). The title of Count 6, "joint venture and agency," indicates the Plaintiffs' intent to assert these two independent theories of liability in a single count. Compare Armor, 535 S.E.2d at 742 (defining "joint venture" under West Virginia law), with General Elec. Credit Corp. v. Fields, 133 S.E.2d 780, 783 (W. Va. 1963) (setting forth the determinative characteristics of a principal-agent relationship). Their pleading, however, primarily addresses the existence of a joint venture between Shellpoint and US Bank Trust and makes only passing reference to the existence of an agency relationship between them. See Dkt. No. 5 at 17-18. Based on this pleading, as well as the parties' briefing and oral argument, the Court construes Count 6 to assert only a claim for joint venture and will address the corporate defendants' arguments seeking dismissal of Plaintiffs' agency claim in connection with its consideration of Counts 7, 8, 9, 10, and 12.

MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]

Whether the Plaintiffs have plausibly pleaded the existence of a joint venture between Shellpoint and US Bank Trust related to the consolidated loan origination or closing in June 2007 depends on whether their complaint contains any factual allegations beyond the mere recitation that they formed a "single business enterprise" to "clos[e] . . . the sale and financ[e] . . . the home at issue in this case" (Dkt. No. 5 at 17). Because Shellpoint did not begin servicing the loan until 2017, and the deed of trust was not assigned to US Bank Trust until 2021, the corporate defendants clearly could not have been involved in any joint venture in 2007.

The Plaintiffs assert that

[d]efendants US Bank and Shellpoint have one or more agreements to engage in the business enterprise of collecting on the subject account; said Defendants shared in the profits of this enterprise; said Defendants each used its purported skill and knowledge to carry out the enterprise (that is, the ownership and servicing of the loan); and that the actions were done with a joint purpose to further then enterprise of generating profits from collection on the subject mortgage (and others contained in the same pool).

(Dkt. No. 10 at 20). But in a footnote to their briefing, they concede that their "pleading could have been clearer on this issue." Id. at n.6. They further assert that "[d]iscovery will demonstrate that Defendant US Bank expected Defendant Shellpoint to follow its loan serving guidelines and other requirements set

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

forth in a servicing agreement, and in some circumstances, delegated authority to it to engage in servicing practices to maximize return on the investment in the loan pool." Id. at 20. Even so, the Plaintiffs' complaint is devoid of sufficient facts to support the existence of a joint venture between Shellpoint and US Bank Trust in 2007.

**E.   Counts 7, 8, 9, 10, and 12 against US Bank Trust**

In its motion to dismiss the remaining claims related to illegal loan servicing, US Bank Trust argues that the Plaintiffs have failed to allege that it engaged in any wrongdoing in this regard (Dkt. No. 7 at 8-9). The Plaintiffs acknowledge they did not plead that US Bank took any action constituting illegal loan servicing, but they argue they have sufficiently pleaded an agency relationship between US Bank Trust as the principal and Shellpoint as its servicing agent, and that discovery will disclose a servicing agreement between the corporate defendants granting Shellpoint the authority to act for, and under the instruction of, US Bank Trust (Dkt. No. 10 at 21-23). They also contend that, because they have challenged US Bank's authority to collect on the loan for lack of chain of title, issues of fact exist that must be developed in discovery. Id. at 22.

MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]

Under West Virginia law, a principal may be held liable for the acts of its agent. Syl. Pt. 3, Jarvis v. Modern Woodmen of Am., 406 S.E. 2d 736 (W. Va. 1991). Four general factors determine whether a master-servant relationship exists under the doctrine of respondeat superior: "(1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. Finally, "[p]roof of an express contract of agency is not essential to the establishment of the relation. It may be inferred from the facts and circumstances, including conduct." Fields, 133 S.E.2d at 783.

In their complaint, the Plaintiffs have alleged that the corporate defendants were agents of and acted under the control of each other, and that "Shellpoint claims to be the servicer" of the Plaintiffs' loan and that US Bank Trust "purports to be the holder" of their loan. In Warden v. PHH Mortgage Corporation, a similar allegation was found sufficient to plausibly plead an agency relationship between a loan servicer and a mortgage holder. 2010 WL 3720128, at *4 (N.D.W. Va. Sept. 16, 2010). "In the instant case, the plaintiffs allege that PHH serviced a loan held by Fannie Mae, and did so as an agent. Accepting these allegations as true, the Court finds that PHH could have plausibly acted as Fannie Mae's agent. Whether Fannie Mae had some degree of control over the

PATTERSON ET AL. V. NEWREZ LLC ET AL.                    1:21CV126

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

conduct and activities of PHH is a question to be answered in discovery. At this stage, however, the plaintiffs have sufficiently pled the existence of agency." Id.

As in Warden, the Plaintiffs here have plausibly pleaded an agency relationship between US Bank Trust and Shellpoint based on the nature of their relationship as loan holder and loan servicer, respectively. Warden, at *4 ("By its very nature, a servicer acts as the agent of a loan holder by collecting payments due under the loan and providing other services upon the default of the borrower.").

### IV. Conclusion

For the reasons discussed, the Court:

1. **DISMISSES** all claims against defendant David with prejudice;

2. **DENIES** the Plaintiffs' motion to remand;

3. **DENIES** the corporate defendants' motion to dismiss Counts 1, 3, 4, and 5;

4. **GRANTS** the corporate defendants' motion to dismiss Count 2 with prejudice;

5. **GRANTS** the corporate defendants' motion to dismiss Count 6 without prejudice; and

**PATTERSON ET AL. V. NEWREZ LLC ET AL.**                    **1:21CV126**

**MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS'
MOTION TO REMAND [DKT. NO. 9], DISMISSING CLAIMS AGAINST
DEFENDANT DAVID, AND GRANTING-IN-PART AND DENYING-IN-PART
THE CORPORATE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]**

    6.   **DENIES** US Bank Trust's motion to dismiss Counts 7, 8, 9,

10, and 12.

It is so **ORDERED**.

The Clerk **SHALL** transmit copies of this Order to counsel of

record by electronic means.

DATED: January 25, 2022

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE